My name is Mary Ann Dugan. I represent the plaintiff appellant in this case. I would like to reserve five minutes for rebuttal if it works out that way. Also, I would like to focus on the statute of limitation arguments as those are dispositive and rest on the briefs on the other issues of service and brought on the court on the motion to compel discovery unless the court has questions about those. There are three alternative arguments regarding the statute of limitations in this appeal. First of all, several events occurred within the statute of limitations period and those events were sufficient to create an issue of fact for the jury. Second, the discovery doctrine should allow the plaintiff to bring his claim regarding the prior, the events that were outside of the statute of limitations period. And third, the continuing violation theory and actually I will address that issue first because there is a fairly new case on that issue, should allow the plaintiff to bring all of the claims that he set forth in his complaint. On the continuing violation argument, there is a fairly new case, Carpinteria v. County of Santa Barbara, which was from In that case, which did, of course, come after National Railroad in footnote 3. Now, I would point out also that case is very close on point with this case because it allowed, I'm sorry, it alleged that a county had imposed delays and additional permit requirements in retaliation for a developer speaking out publicly and that the county had come up with a, quote, go tough on Nesbitt policy. In the case, alleged First Amendment and due process violations. In that case, Carpinteria Valley Farms, footnote 3, the court stated it was remanding to the district court and on remand, the court may consider whether to allow Nesbitt to amend his complaint to allege facts in support of two alternative theories on continuing violation. One was a systematic pattern or practice. And the other was the hostile environment situation, which the National Railroad court had addressed. Given that the Ninth Circuit has now interpreted National Railroad in this case to allow those types of continuing violation allegations, especially in a case that's very close on case, I would suggest Carpinteria Valley Farms versus County of Santa Barbara. Three. Forty four after the 22. I apologize for not putting that into a 28 day letter. I should have done that last week. The other thing in that case, what the Carpinteria was, was that the statute of limitations situation was very, very analogous to the current case where the district court had found that only two specific incidents had happened within the limitations period. This court disagreed and remanded on various theories, including the continuing violation theory. However, the in this case, the acts which occurred within the limitations period themselves are sufficient to allow a jury to find that the Forest Service retaliated against Mr. Oberdorfer and Western Radio for suing the Forest Service and for speaking out against them. The district court found that only two actions occurred and omissions occurred within the limitations period. One was the denial or the refusal to mediate between Mr. Oberdorfer at Western Radio and another radio services provider when the Forest Service had initially said they would mediate. The second action or omission, which the district court found occurred within the limitations period, was the refusal to address an administrative appeal. The defendants had pointed out that that one was actually resolved. So that case is moot. But is that Walker Mountain? Yes, I believe so. Is that has that been resolved? Yes. The one that's mentioned in the district court opinion was actually resolved. There are other that you agree that makes it move. That one is moot. Yes. There are, however, five, at least five other incidents and omissions, acts and omissions which occurred within the limitations period during 1998 and 99. The defendants allowed and this is all set forth in the brief. I'm not going to belabor it unless there are questions. Allowed Oregon State Police to remove their equipment from Western Radio's facility on King Mountain. And Western Radio alleged that the Forest Service thereby intended to allow OSP to harm Western financially. These all depend on your continuing violation theory. No, Your Honor. This was this one that independently occurred during the two years. Yes. There were actions that were taken in both 98 and 99. The 99 actions are within the limitations period. The record indicates that there's no it's not disputed that that that that occurred during the limitations period. If I'm wrong on that, I'm sure the defense will point that out. But I'm not aware of anywhere in the record where that's rebutted. Also, during 98 and 99, Forest Service allowed ODOT to move its facilities from Western Radio's King Mountain facility before the necessary permit had even been processed. There were administrative appeals on those. Right. Yes, I believe so. Those were resolved. No, I'm sorry. I do not believe those were there were administrative appeals on those issues. The defendants have refused to enforce cellular ones permit to stop interference with Western's signal on Walker Mountain. In a sense, you could argue that's a continuing violation argument. But I think that the case law supports the fact that a failure to act is not subject to the same analysis as the statute of limitations on an actual action. Same with the Western Radio's 97 application to expand operations on Round Mountain, which has never been processed. And if it's 97, that's not within two years. Well, it's never been processed. And in 2000, Mr. Oberdorfer was told, and this is at ER 131, that it was not being processed because he was suing the Forest Service. This is something he was told in 2000. The 98 administrative appeal of the authorization of cellular ones reconstruction of the tower on Walker Mountain has never been processed. And I'm sorry, Your Honor, Judge Silverman, I think the district court was stating another mountain, not Walker Mountain. And I'm sorry, I'd have to look at the opinion, but it's not the same one. It's Aldrich Mountain. Aldrich, thank you. The. So those are those are issues that those are acts and emissions that occurred within the statute of limitations period. And those given the animus that's been expressed by the Forest Service in the various statements, which I'll get into in a second. And given the timing of the adverse actions in relation to Mr. Oberdorfer's protected activities, and also given the earlier events as evidence, which this court and the Supreme Court have stated is allowed, this is enough information to go to the jury on the more recent events. As far as the animus, the statements by the Forest Service include you pull our chain, we'll pull yours. That's at one thirty. This. Another statement was this Ninth Circuit opinion should stuff a sock in that big mouth of Mr. Oberdorfer. One fifty one. Oberdorfer is poison. You're one eighty five. And the fact that Mr. Oberdorfer was criminally investigated for an alleged event on a mountain where other people had access. He was the only person investigated. That's a year. One twenty four and one ninety five. One ninety seven. Finally, on the discovery doctrine. Mr. Oberdorfer's statement has not rebutted that it was the FOIA responses, Freedom of Information Act responses, which led him to suspect that he was being retaliated against when he starts finding these e-mails, which are at one fifty one and one eighty five that I've just discussed. And that happened within the limitations period. His discovery of those documents. Well, what you've recently told April 1997, the Forest Service had adopted a policy that if you pull your chain, we'll pull yours. It's a good Mr. Oberdorfer. And that was that there was such a policy. And that was in 1997. That's true, Your Honor. If the court finds that that as a matter of law is enough to make a reasonable person know that they have a claim. I agree that you're correct on the discovery doctrine. However, I would argue that that's an issue for the jury. What a reasonable person would know and when they know it, as this court has held in several cases. Which I can't find right now, but which are in the brief. The issue of when a reasonable person would have known that he had been wronged is generally an issue for the jury. Unless the court has further questions, I would like to reserve the remainder of my time for rebuttal. Thank you. Morning, Your Honors. My name is Ken Baumann. I'm an Assistant United States Attorney for the District of Oregon. At counsel to the table with me is Mr. Jeff Handy. He's also an Assistant United States Attorney. He's admitted to practice in this court. He's also a defendant in this case. A few opening remarks. This is a Bivens action. And that is a word we use sometimes to describe a legal procedure. And we forget it's really a lawsuit against employees of the United States Forest Service, personally. Seeking to make them financially liable to the plaintiff. And that's the context this case is filed in. That's the seriousness of this case. I represent those people as a member of the Oregon Bar in an individual capacity. The way I see this case coming before this court is coming before this court, even though I made on behalf of the defendants a motion for summary judgment or in the alternative a motion to dismiss, the granting of my motion to dismiss by Judge Hogan. He didn't address all the grounds I raised in my motion. He based his motion to dismiss on one argument. That was whether or not there were allegations of a conspiracy that occurred after the two-year Oregon statute of limitations. Review on a motion to dismiss, I submit to you, is de novo with regard to the legal issues. The only real legal issue in a statute of limitation claim is what is the statute of limitations. And that is clear. It's two years in Oregon. The next part comes with Judge Hogan, who reviewed the entire record, despite what counsel says, he only found, and I determined that that would be based on a clear error standard, that there were two acts alleged that could have occurred after August 1st of 1999. In other words, fell within the statute of limitations. And he disposed of both of those, saying that they didn't constitute a cognizable claim. Once you get to that point, the conduct occurred before that can only be taken into consideration in making your determination whether the two alleged acts that occurred after August 1st, 1999 were against the defendant and part of the conspiracy. Mr. Barber, suppose we were to find that Judge Hogan was wrong in striking the allegation of fraud on the court that he struck on the grounds that it was scandalous. Suppose we were to conclude that that's no more scandalous than any other allegation of lawyer misconduct, which he made all the time. What happens then? Then either you would have to send it back or you yourselves would have to go back, because you can affirm or whatever with anything supported by the record, and determine whether or not the allegations that involved Mr. Handy also fell within the statute of limitations. And then you'd have to analyze whether or not those form a cognizable claim under a conspiracy theory. Remember, the conspiracy theory here, which I'll address in a minute or two, is that these gentlemen conspired to violate Mr. Oberdorfer's rights to petition the government. So you'd have to go back and analyze that, or Judge Hogan would have to go back and analyze that again on a statute of limitations claim. Since you brought up reexamining those earlier acts, you as a court can affirm for any grounds supported by the record. Judge Hogan didn't reach one of my claims for dismissal of this action, and that is based on the in-bank decision by this court in WM Technologies. There's a quote that I quote in one of the footnotes from that case. It says, The protections afforded by the petition clause have been limited by the Supreme Court to situations where an individual's association or speech interests are also implicated. There are other district court opinions that say involved in administrative or legal litigation with the government is not an effect on association or speech interests. So you actually have an in-bank opinion that I submit to you this case is not cognizable under. It just is not a constitutional violation, even if you assume all the allegations by Mr. Oberdorfer are true. Now, I disagree with my counsel's statement to you that, in fact, there are allegations in the complaint that, other than those found by Judge Hogan, that are beyond the August 1st, 1999 statute limitations. Judge Hogan had those before you. I submit when you examine the record, they are not definitive, and they do not allege conduct that occurred after August 1st, 1999. Let me ask you another question. Suppose we were to disagree with Judge Hogan about service on Reyes. Okay. What happens then? Does that have to go back? Well, it doesn't have to go back if you decide there's no case. Obviously, I would argue decide whether or not he was right in dismissing it for jurisdictional grounds. Decide then whether or not you can even make a claim of petitioning the government. If you find all those things occurred, only then do you examine whether the service of Mr. Reyes or Mr. Porter are, in fact, valid under Oregon law. But if you reach those, then, yes, you have to reach those two individuals as to their service. It seems like we reversed the order of that. I would have thought we'd look to see whether the party was properly served first, and then we'd. . . Well, I'm not here to tell you what your order of consideration was. I was just lodging it through my own mind, Judge. You know, we try to save as much work as possible, so if you're going to affirm Judge Hogan, why would you examine that issue? I guess that was kind of my thinking on that. If I can, the Carpinteria Valley Farms case, I'm at a disadvantage. I had not read that. I didn't know it was going to be discussed, so I can't actually bring it forward. There is, and I don't know what the court's going to do, but attached to the reply brief of the plaintiffs is an opinion by United States Magistrate Judge Hogan I would point out that was not part of the record below. The court has criticized in past cases, I think the first one is Lowry v. Bernhardt, 329 F3 1019, adding things that aren't part of the record below. But assuming for the sake of argument, we're going to consider that case. That opinion is by United States Magistrate Judge Hubel, and it involves the Portland Police Bureau officers and a conspiracy. I don't quite understand. You don't think we ought to consider opinions? It's an unpublished opinion by the district court here that was not part of the record below. So that's a violation of the rule against citing unpublished dispositions. But assuming for the sake of argument that you're going to do that, I want to address that for a moment. If you read through that opinion, and they're talking about six police officers who get together to arrest a guy and then he gets an excessive force claim. When Judge Hubel addressed that, if you read that opinion, he says in there six times that the reason he's distinguishing it is the officers met. To have a conspiracy, you have to have a meeting of the minds. You go back to criminal law on this. They got together to do an unlawful act or to do a lawful act by unlawful means. Nowhere in this complaint does it allege that they ever got together and formed a common purpose or scheme. So that particular opinion is of no significance to the issue before this case. And judges, I hope I've expressed all my views. You don't have any other questions. Thank you. The foul PFAU opinion that was attached. It's an unpublished opinion, but it's from the district court. My understanding is that the rule is not to cite unpublished Ninth Circuit opinions. I'm not aware of a rule against citing unpublished district court opinions. The statements regarding when things happened within the statute of limitations period are not just in the complaint. They're in Mr. Oberdorfer's affidavit, which is in the record on the pages that I've cited. As far as the claim being cognizable, I'm not sure where that argument is coming from. In both Serrano and in this recent Carpinteria case, the lawsuit, the court addressed developers who were trying to get permits. It's clear that the lawsuit need not be in the public interest. This case is virtually indistinguishable procedurally from those cases. Excuse me. I did find the cases regarding the fact that a question regarding what a reasonable person would know and when they knew it is a question for the trier of fact. That's Volk v. D.A. Davidson, one of this court's opinions. And then there's state law cited also in my opening brief at page 39. To avoid going to the jury on a claim that is within the statute of limitations, this type of claim, the defendant has to show that it would have done the same action, not that it just could have done the same thing. That's in the Serrano case and in the recent Settlegood opinion from this court. Mr. Oberdorfer and Western Radio have presented substantial evidence that there was retaliation against him in terms of timing regarding his litigation, in terms of the animus statements showing animus against him. There's certainly enough evidence to go to the jury. The trial court, Judge Hogan, interpreted the facts in favor of the defendant in this case in order to throw this case out. Finally, to go back to the defense counsel's initial statement, this is not just a Bivens action. There was also a claim for injunctive relief versus against the officials in their official capacity. And that claim is also part of what's been thrown out in this case. Unless there are further questions. Thank you, Kathy. Thank you. Thank you both. The case is adjourned and will be submitted. The next case on the calendar is Lancaster v. Settlegood. Thank you.
judges: Reinhardt, Silverman, Clifton